Jane DOE, on behalf of herself and all others similarly situated,
Plaintiffs,

v.

Frithjof O. M. WESTBY, Individually and as Secretary of the South Dakota Department of Social Services, and Vern Woodard, Individually and as Director of the South Dakota Division of Social Welfare, Defendants.

Civ. No. 74–5017.

United States District Court,
D. South Dakota, W. D.

Sept. 29, 1975.

Michael A. Wolff, Black Hills Legal Services, Inc., Rapid City, S. D., for plaintiffs.

Morton R. Wilkins, Jr., Rapid City, S. D., for defendant Woodard.

R. K. Krogstad, Pierre, S. D., for defendant Westby.

Before ROSS, Circuit Judge, and BENSON and BOGUE, District Judges.

## MEMORANDUM OF DECISION AND ORDER

BENSON, District Judge.

### STATEMENT OF THE CASE

In this action, plaintiff seeks both declaratory and injunctive relief under 28 U.S.C. § 1343(3) and (4), and § 2201, 42 U.S.C. § 1983, and statutory relief under Title XIX of the Social Security Act of 1935, 42 U.S.C. § 1396 *et seq.* She challenges as unconstitutional, and seeks to restrain, a policy promulgated by the Social Services Department of the State of South Dakota in its administration of Chapter 28D.2 of the rules of the South Dakota Department of Social Services, which precludes Medicaid payments for abortions unless necessary to save the life or health of the mother. Upon this issue, and pursuant to 28 U.S.C. § 2281, a three-judge court was designated to hear the case. She also alleges the regulations and policy violate the federal Medicaid Statutes, 42 U.S.C. § 1396 *et seq.*

### FINDINGS

There is no significant dispute between the parties on the facts. As enumerated in the Court's previous order,[1] the facts are:

1. At the time the complaint was filed, plaintiff, Jane Doe, was eight weeks pregnant and the unmarried mother of four children—ages ten, nine,

eight, and four.[2] She was the recipient of Aid to Dependent Children under the federal-state program administered pursuant to the Social Security Act of 1935, 42 U.S.C. § 601 *et seq.* She was also eligible for medical assistance (Medicaid) under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*

2. A pregnancy is a condition which requires medical care.

3. In South Dakota the Medicaid program is administered by the Defendant Frithjof O. M. Westby, who, in his position as Secretary of Social Services, is by statute the head of the Department of Social Services. Included in the Department of Social Services is a Division of Social Welfare. The head of the division is Defendant Vern Woodard.[3] Plaintiff, in consultation with her physician, decided to terminate her pregnancy. Termination was not "medically necessary", but was desired by the plaintiff because she felt she was unable to care for another child, and an abortion would be in her "best interest". She did not have the financial resources to pay for an abortion and was advised by the defendants, or their agents, through her attorney, that an elective abortion was not covered under the Medical Assistance Program and Medicaid would not pay for her abortion.

4. Rule 28D.210 of the South Dakota Department of Social Services provides:

"Physician services not covered under the Medical Assistance Program are as follows:

1. Any items or services which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the

---

1. *Doe v. Westby*, 383 F.Supp. 1143 (D.S.D. 1974).

2. Plaintiff, who appears under an assumed name, was a married woman at the time of the birth of her children.

3. *See* South Dakota Compiled Laws Chapter 1–36.

functioning of a malformed body member."

Pursuant to the foregoing rule, defendants will not extend Medicaid to cover payment for a nontherapeutic abortion for one otherwise qualified for Medicaid, but will authorize payment for an abortion when the claim is accompanied by a written medical report indicating that a therapeutic abortion is necessary.

5. Under the South Dakota program, a pregnant Medicaid recipient who chooses to carry her pregnancy to full term is given "any medical care that would be required in connection with the delivery of a child up to thirty days hospitalization of the mother and child and unlimited doctor care and services".

6. At about the twelve week point of her pregnancy, plaintiff secured an abortion from her physician. Plaintiff remains indebted to the physician for his services.

On September 24, 1974, the three-judge court filed its Memorandum Decision and entered judgment for the plaintiff. In its decision, the panel examined only the constitutional issue presented by the plaintiff, whether "the policy being followed by the State of South Dakota in its administration of the medicaid program as it relates to pregnant women, otherwise qualified for medicaid, violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States by discriminating between medicaid eligible women who carry their pregnancy to term, and medicaid eligible women who desire to terminate their pregnancy for nontherapeutic reasons, and thereby inhibits the one class in the exercise of a fundamental right." The Court did not consider the plaintiff's allegation that the State's policy violated Title XIX.

4. The March 16, 1975, order of the Supreme Court, 420 U.S. 968, 95 S.Ct. 1385, 43 L.Ed. 2d 648, reads in part, "Judgment vacated and case remanded for further consideration

The Supreme Court summarily vacated and remanded for reconsideration in light of *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).[4]

## JURISDICTION

Following remand, defendants moved to dismiss the action for lack of jurisdiction. In denying the motion, this Court held:

"It is clear that the Plaintiff's constitutional claim is of sufficient substance to support federal jurisdiction, and the requirement that the constitutional claim not be reached until the statutory claim has been considered does not divest this Court of jurisdiction in the matter."

*Hagans v. Lavine, supra,* states:

"[T]he coincidence of a constitutional and statutory claim should not automatically require a single-judge district court to defer to a three-judge panel, which, . . . could then merely pass the statutory claim back to the single judge." 415 U.S. at 544, 94 S.Ct. at 1383.

■ In this case, the single-judge district court did defer to the three-judge panel which, after appropriate hearing, made its findings on the facts in the case. Additionally, both the statutory and constitutional issues have been fully argued to the three-judge court, and it has jurisdiction to consider the statutory claim. *See California Department of Human Resources v. Java,* 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971); *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); and *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); in addition to *Hagans v. Lavine, supra.*

In the interest of judicial economy and efficiency, this three-judge court

in light of *Hagans v. Lavine*, 415 U.S. 528, 543–545, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)."

will proceed to consider the statutory claim.

## STATUTORY CLAIM

Subsequent to the Supreme Court's mandate, the Third Circuit Court of Appeals considered *en banc* a case which presented an issue almost identical to the issue now before this Court. *See Doe v. Beal*, 523 F.2d 611 (filed July 21, 1975, 3rd Cir.) [5] In *Beal*, a three-judge panel had first considered the statutory claim, but had decided the Pennsylvania procedures under its Medical Assistance Program restricting payments for abortions were consistent with Title XIX of the Social Security Act. *Doe v. Wohlgemuth*, 376 F.Supp. 173, 182–86 (W.D. Pa.1974). They next considered the allegations of unconstitutionality and declared the procedures to be in violation of the Equal Protection Clause. *Doe v. Wohlgemuth* at 186–92. Both arguments were renewed on appeal.

The Court of Appeals proceeded with a comprehensive analysis of the Title XIX issue. In applying that analysis to the Pennsylvania regulations, the *Beal* Court found them inconsistent with the federal Act. It made the following conclusions:

> "Applying the above analysis to the Pennsylvania regulations before us, we find them to be inconsistent with the Act. Since the Commonwealth of Pennsylvania pays for full-term deliveries and also for therapeutic abortions, it is plain that the state has determined, in its discretion, that pregnancy is a condition for which medical treatment is 'necessary' within the meaning of Title XIX. The next question is whether some justification can be found in the statute for preventing an attending physician from choosing non-therapeutic abortion as the method for treating a pregnancy. We can find none. Economy will not

do, since in most cases non-therapeutic abortion is the cheapest method of treatment. See *Doe v. Rose, supra*, 499 F.2d at 1116–17, *citing Klein v. Nassau Cty. Med. Ctr., supra* 347 F. Supp. 496 note 12; *Doe v. Wohlgemuth, supra*, 376 F.Supp. at 187. Nor will protection of the recipient's health, under § 1396a(a)(19) suffice; the state itself admitted at oral argument that non-therapeutic abortion is the least dangerous alternative for the pregnant woman, at least during the first trimester. See *Roe v. Wade, supra*, 410 U.S. at 163, 93 S.Ct. 705. Not only are the state's abortion regulations not justified by any statutory policy, but they also run directly counter to § 1396a(a)(10)(B) and (C), since the 'least voluntary method of treatment' requirement which the regulations impose on pregnant women is imposed on no other class of recipient. We therefore conclude that once the state has decided to finance full-term delivery and therapeutic abortion as methods for the treatment of pregnancy, it cannot decline to finance non-therapeutic abortions without violating the requirements of Title XIX. Since the decisions of the Supreme Court have forced the states to include elective abortion in the legal practice of medicine through the second trimester of pregnancy, we also hold that the statute requires Pennsylvania to fund abortions through the end of the second trimester." *Doe v. Beal*, 523 F.2d at 621–622.

■ We adopt the reasoning of the *Beal* Court, and hold that South Dakota, in extending medical aid for full term deliveries and also for therapeutic abortions, has determined, in its discretion, that pregnancy is a condition for which medical treatment is necessary within the meaning of Title XIX, and it cannot decline to finance nontherapeutic abortions

---

5. The case was an appeal of *Doe v. Wohlgemuth*, 376 F.Supp. 173 (W.D.Pa.1974). The caption was changed to *Doe v. Beal*, pursuant

to F.R.Civ.P. 25(a)(1), after the appeal had been docketed.

without violating the requirements to Title XIX.

■ We further incorporate in this decision, by reference to the decision of this Court in *Doe v. Westby, supra,* the previous holding of this Court that the State of South Dakota, in providing Medicaid benefits to those eligible pregnant women who choose to carry their pregnancies to·term and those· who receive therapeutic abortions and deny Medicaid benefits to those eligible women who elect on the medical judgment of their physician a constitutionally protected nontherapeutic abortion as defined in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), has created a classification which is in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

The plaintiff is entitled to Medicaid benefits covering the cost of her abortion.

The defendants, their agents, their employees, successors in interest, and all others acting in concert with them, are enjoined from the enforcement or execution and application of Rule 28D.2 of the Rules of the South Dakota Department of Social Services, or the statute under which such rule was promulgated, so as to deny the plaintiff Medicaid benefits covering the cost of her abortion.

It is assumed the State of South Dakota will give full credence to this decision, and that where Medicaid benefits are extended to Medicaid eligible pregnant women who elect to carry their pregnancy to term or who receive therapeutic abortions, Medicaid benefits will also be extended to Medicaid eligible pregnant women who elect, on the medical judgment of their physician, constitutionally protected nontherapeutic abortions.

It is ordered that judgment be entered accordingly.