In the Matter of BARBARA SHOOK et al., for Themselves, Their Dependent Minor Children and All Others Similarly Situated, Petitioners, v ABE LAVINE, as Commissioner of the New York State Department of Social Services, et al., Respondents.

Fourth Department, October 31, 1975

*Daniel F. Cashman (John M. LeFevre* of counsel), for petitioners.

*Louis J. Lefkowitz, Attorney-General (Jean M. Coon* and *Paul O. Harrison* of counsel), for Abe Lavine, respondent.

*Frank P. Celona* for James Reed, respondent.

MARSH, P. J. Since petitioners have not raised the issue of whether the administrative determination is, on the entire record of the hearing, supported by substantial evidence, Special Term should have disposed of the legal issues raised in this proceeding (CPLR 7804, subd [g]; 7803, subd 4). However, even though transfer was improper, as the papers before this court are sufficient to enable the case to be disposed of, we

should do so (CPLR 7804, subd [g]; *Matter of Dumbleton v Reed,* 49 AD2d 687).

As to the constitutional questions raised by petitioners, the court may treat this proceeding as an action for declaratory judgment, as long as it has jurisdiction over the parties, and address the constitutional issues *(Matter of Kovarsky v Housing & Development Admin.,* 31 NY2d 184, 192).

Petitioners were denied Aid to Families with Dependent Children (AFDC) assistance solely because they transferred property without consideration, presumptively for the purpose of obtaining public assistance. Section 104-a of the Social Services Law provides:

"For the purposes of the provisions of this chapter disqualifying a person from eligibility for a category of public assistance or care by reason of his voluntary transfer of property, a transfer of property made within one year from the date of the person's application for such assistance shall be presumed to have been made for the purpose of qualifying for such assistance."

18 NYCRR 352.23 provides: "(a) Resources shall be so utilized as to eliminate or reduce the need for public assistance, rehabilitate the client and conserve public funds through assignment and recovery. Applicants and recipients shall generally be required to utilize available resources and to apply for and otherwise pursue potentially available resources."

Regulation 18 NYCRR 352.15 (d) instructs the Departments of Social Services to ascertain the nonessential property holdings of applicants as a means for reducing need for public funds.

Petitioners contend, correctly, that the above provisions are inapplicable to determinations of eligibility for AFDC assistance. Section 104-a is not self-executing, but is to be used as a standard only in conjunction with other "provisions of (the Social Services Law) disqualifying a person from eligibility for a category of public assistance or care by reason of his voluntary transfer of property". While former title 7 (Assistance to the Blind), former title 8 (Aid to the Disabled) and title 11 (Medical Assistance for Needy Persons) contain express limitations on "eligibility" to those who have not made a voluntary transfer of property for purposes of qualifying for such aid (Social Services Law, former § 285, subd 5; former § 302, subd 7; Social Services Law, § 366, subd 1, par [e]), there

is no comparable provision in the "Eligibility" section (Social Services Law, § 349) of title 10 of article 5 (Aid to Dependent Children) which would serve to invoke section 104-a. This omission, in light of express provisions elsewhere in article 5, appears to have been intended by the Legislature. The Legislature has provided specific sanctions for welfare fraud.

Regulation 18 NYCRR 352.23, as a general guide, is also ineffective to serve as a basis for denying aid. Regulation 18 NYCRR 352.15 (d) is relevant only insofar as it serves to show the current actual need of recipients or applicants based on presently held assets. In the cases presented here, past legal ownership of assets was used as the basis for later denying assistance.

While the construction of the statute by the administrative agency charged with its enforcement is not binding on the courts, it should be accorded some weight and it should be noted that the Acting Commissioner of the Department of Social Services appears to have reversed the position taken by the respondent and interprets the law to prohibit local Social Services Departments from denying public assistance in AFDC cases upon the resource transfer rationale. This is apparent from a recent decision relating to an application under AFDC that appears to reverse the stand of former Commissioner Lavine. "There is no provision in the Social Services Law or the regulations of the State Department of Social Services which would authorize the agency to deny assistance on the grounds that an applicant had made a transfer of property in order to be eligible for such assistance." *(Matter of German,* dated July 8, 1975.)

Were section 104-a to be read as authority for denying AFDC assistance it would meet with valid constitutional objections. Funds for State AFDC programs are largely Federally supplied. To be eligible for Federal funding, States must comply with subchapter IV of the Federal Social Security Act (US Code, tit 42, § 601 *et seq.).* Regulation 45 CFR 233.20(a) (3) (ii) (c) provides that "only currently available resources will be considered" in determining the need for AFDC assistance. This is a "Requirement for State Plans" (45 CFR 233.20[a]).

Respondents have not contested the need or the dependency of the families and children involved.

In *King v Smith* (392 US 309) the Supreme Court struck down an Alabama statutory provision as violative of the Equal Protection Clause of the Constitution because it denied AFDC

assistance to children living in a home with a nonparent male, i.e., a "substitute" father. The Federal Social Security Act defines as "dependent" and thus eligible for AFDC assistance, a child deprived of "parental" support. The court expressly declined to reach the issue as to whether the State law violated the supremacy clause as well, but it did note that the Alabama provision was invalid because it defined "parent" in a manner inconsistent with that of the Federal Social Security Act (392 US, at p 333).

Subsequently in *Townsend v Swank* (404 US 282) the court invalidated an Illinois statute which made 18- to 20-year-olds attending colleges or universities ineligible for AFDC assistance. The court held that "a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause" (404 US, at p 286).

Federal law (US Code, tit 42, § 602, subd [a], par [10]) requires of participating States that "aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals". " 'Eligibility', so defined, must be measured by federal standards" *(Carleson v Remillard*, 406 US 598, 600, citing *King v Smith, supra).* The States may not vary this Federal standard without congressional authorization *(Carleson v Remillard, supra,* p 601). Leeway has been given to the States insofar as determining the standard of "need" and the amount of funds to devote to the program *(King v Smith, supra,* pp 318–319) but once "need" has been established the only additional eligibility standard is "dependency" (US Code, tit 42, § 601). No further State eligibility requirements may be imposed *(Doe v Shapiro,* 302 F Supp 761, app dsmd 396 US 488, rehearing den 397 US 970; *Taylor v Martin,* 330 F Supp 85).

In effect section 104-a would impose an additional standard if it were used to deny assistance on the basis of transference of past resources.

Petitioners are entitled to assistance retroactive for the periods for which it was wrongfully denied by reason of the alleged prior resource transfer.

Class action status should be denied. In *Matter of Jones v Berman* (37 NY2d 42, 57) the court wrote: "where governmental operations are involved, and where subsequent petitioners will be adequately protected under the principles of *stare decisis* * * * we are of the opinion that class action relief is

not necessary." (See, also, *Matter of Dumbleton v Reed,* 49 AD2d 687, *supra.)*

Petitioners assert that all the compelling reasons which make the class action vehicle such an ideal method for remedying grievances which extend over a broad segment of the populace apply with insistent and compelling logic to this case. They ask that the new class action statute, CPLR (art 9), effective September 1, 1975, be applied to these article 78 proceedings notwithstanding that they were commenced before the effective date of the statute (L 1975, ch 207). Not only did the statute become effective subsequent to the commencement of the instant proceedings, but the procedural device for triggering class action status requires that a motion be made within 60 days after all answers have been filed in the action. Petitioners did not bring such a motion within 60 days in the instant case. However when the CPLR went into effect in September, 1963, it was applied to pending actions where it could be done without prejudice to the parties (CPLR 10003; 8 Weinstein-Korn-Miller, NY Civ Prac, par 10003.04). Thus applying the new class action statute, class action status should nevertheless be denied the instant proceedings under CPLR 901 (subd a, par 5): "One or more members of a class may sue or be sued as representative parties on behalf of all if: * * * 5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (L 1975, ch 207.)

The statute clearly vests in the court the discretion to make a determination of the feasibility and desirability of permitting the action to proceed as a class action.

There are no persuasive reasons apparent in these fair hearing cases for class action treatment. There are peculiar factual determinations unique to each fair hearing which has little in common with any other fair hearing. A class action order which involved individual application beyond the article 78 proceeding before the court would pose conceptual and enforcement problems which cannot reasonably be foreseen. Finally, there is no reason why *stare decisis* cannot achieve all that petitioners would hope to achieve by some form of class relief. An enlightening view of the pitfalls of class action relief can be found in the case of *Owens v Roberts* (377 F Supp 45) where the court after rendering class action relief entertained a motion to reconsider wherein affiant outlined the unjustifiable cost and incredible difficulty encountered in at-

tempting to give effect to its class action decree. Faced with these practicalities the three-Judge court reversed itself and eliminated all class action relief. At least on the facts of the existing petitions the Court of Appeals language in *Matter of Jones v Berman* (37 NY2d 42, *supra)* is still persuasive and viable notwithstanding chapter 207 of the Laws of 1975.

The determination should be annulled and petitioners granted relief accordingly.

CARDAMONE, SIMONS, GOLDMAN and DEL VECCHIO, JJ., concur.

Determination unanimously annulled with costs and petitioners granted relief in accordance with opinion by MARSH, P. J.