Mary **BUCKNER**, on her own behalf, on behalf of her household and on behalf of all others similarly situated

v.

Edward **MAHER**, Individually and in his capacity as Commissioner of Social Services of the State of Connecticut.

Edith M. **HUCKLE**, a/k/a Carrie Murphy, on her own behalf, on behalf of her household and on behalf of all others similarly situated

v.

Edward **MAHER**, Individually and in his capacity as Commissioner of Social Services of the State of Connecticut.

Luigi **PORTA**, on behalf of himself and all others similarly situated

v.

Edward **MAHER**, Individually and in his capacity as Commissioner of Social Services of the State of Connecticut.

Civ. Nos. H–75–411, H–76–190 and 15068.

United States District Court, D. Connecticut.

Dec. 10, 1976.

Howard B. Schiller, Willimantic, Conn., Tolland Windham Legal Assistance Program, Inc., for plaintiffs in No. H–75–411.

Edmund C. Walsh, Paul M. Shapiro, Asst. Attys. Gen., Carl R. Ajello, Atty. Gen., State of Connecticut, Hartford, Conn., for defendant in Nos. H–75–411, H–76–190 and 15068.

David L. Snyder, Litchfield Hills Legal Services, Torrington, Conn., Dennis J. O'Brien, Tolland-Windham Legal Assistance Program, Willimantic, Conn., for plaintiff in No. H–76–190.

Raymond Richard Norko, Legal Aid Society of Hartford, Hartford, Conn., Whitney M. Lewendon, Fairfield County Legal Services, Danbury, Conn., for plaintiffs in No. 15068.

Paige J. Everin, Hartford, Conn., for defendant in No. 15068.

Before SMITH, Circuit Judge, and CLARIE and BLUMENFELD, District Judges.

## MEMORANDUM OF DECISION

CLARIE, Chief Judge:

The plaintiffs in these consolidated actions [1] have sued on behalf of themselves and others similarly situated, to invalidate two Connecticut statutes (Conn.Gen.Stat. §§ 17–85 & 17–109(e)), which have rendered them ineligible for welfare benefits under two federally sponsored programs, Medicaid and Aid to Families with Dependent Children (AFDC). They have been unable to satisfy the state statutory requirement that applicants who have transferred assets within seven years prior to applying for benefits must be able to prove that the transfer was in fact made for "reasonable consideration"—that is, for no less than fair market value minus encumbrances. The plaintiffs maintain that these statutory provisions are inconsistent with the federal Social Security Act (SSA), and thus violate the Supremacy Clause of Article VI of the Federal Constitution. They also contend that these state statutes violate their constitutional right to due process and equal protection. The plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983 and a three-judge court has been convened pursuant to 28 U.S.C. §§ 2281 et seq., to consider their challenge to the foregoing state statutes.

The defendant, Commissioner of Social Services for the State of Connecticut, requests the court to dismiss the three pending actions, on the grounds that the constitutional arguments raised by the plaintiff are frivolous and that there is no basis on which the court might properly

---

1. Three actions have been consolidated for this hearing: *Porta v. White* (now *Porta v. Maher*), Civ. No. 15,068 (filed May 30, 1972); *Buckner v. Maher*, H–75–411 (filed Dec. 30, 1975); and *Huckle v. Maher*, H–76–190 (filed May 5, 1976). Luigi Porta, the original plaintiff in the first action, is no longer living. Furthermore, of eight intervenors in that action besides Porta, only four are presently alive. Of these, the cases of Richard Bennett and Peter Galonek were fully briefed and argued before the Court. The cases of plaintiff-intervenors Susan McFalls and Harold Gilbert, who are also still living, are essentially similar to that of plaintiff Galonek. Therefore the specific circumstances surrounding their applications for assistance need not be probed in detail.

It has been called to the attention of the court that during a period of approximately four months in late 1974 there were no living plaintiffs in the *Porta* case. At that time Porta himself and four plaintiff-intervenors had died, and the four present plaintiffs had not yet intervened. The defendant raised no objection to the subsequent intervention of the four present plaintiffs, however, and argued the matter only briefly before the three-judge court convened in June of 1976, after the plaintiffs first raised the question.

The court finds that the hiatus between July and November of 1974 in which there was no living plaintiff does not require dismissal of the *Porta* case. A motion for class certification in *Porta* was filed in September, 1972. By agreement of counsel no action was taken on that motion—or on the case in general—pending the Connecticut Supreme Court's decision in the case of *Morgan v. White,* 168 Conn. 336, 362 A.2d 505 which was not handed down until April 15, 1975. *See generally* note 6 *infra.* The United States Supreme Court has provided for retroactive class certification in an appropriate case—in particular, where a case becomes moot "before the district court can reasonably be expected to rule on a certification motion"—provided that a "live controversy" persists throughout the period of time involved. *Sosna v. Iowa,* 419 U.S. 393, 402 n. 11, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975). This case is found to be an appropriate one for such retroactive certification, and thus the principles in the *Porta* case shall be decided here along with *Huckle* and *Buckner.*

consider the pendent statutory claims.[2] The Commissioner argues that, even if the constitutional claims raised in these actions were deemed to be substantial, it is appropriate that a single judge decide all such statutory questions, not a three-judge constitutional court.

Said defendant maintains that there is no inconsistency between Connecticut's statutory limitation on welfare eligibility and the federal Social Security Act. He argues that, with respect to the cases of the plaintiffs Huckle and Buckner, favorable action was denied, not because there was a finding of insufficient consideration per se, but rather because the applicants had failed to supply sufficient information upon which the Commissioner could base an eligibility decision.

The court is not unmindful of the legitimate state need for strong legislative controls to curb fraudulent transfers undertaken for the very purpose of qualifying the property transferor for immediate welfare assistance. However, the court finds that the Connecticut "transfer-of-assets" statutes are inconsistent with the minimal qualifying requirements of the federal Social Security Act, that those laws are in violation of the Supremacy Clause and that the plaintiffs' constitutional claims are not frivolous. The plaintiffs' motions for class certification are granted.

## FACTS

There is no dispute as to the material facts of these cases, a stipulation having been mutually agreed to and filed by counsel. Medicaid (42 U.S.C. §§ 1396 *et seq.*) and AFDC (42 U.S.C. §§ 601 *et seq.*) are federally sponsored welfare programs. In states which choose to participate in one or both, a particular state agency (typically the state welfare department) is designated to administer the program. Some parameters of that agency's operations are prescribed in advance by the Social Security Act. For instance, the Act establishes eligibility criteria from which the states are not free to deviate. For Medicaid the sole criterion for eligibility set up in the SSA is need;[3] and for AFDC the criteria are need and dependency.[4]

Other parameters of the state agency's operations are left expressly to state choice under the SSA. Thus a state is free to select the level of payments which will be authorized for recipients in particular disadvantaged categories. In matters for which a locus of decision is not prescribed by the SSA or its regulations, the states may adopt reasonable rules and regulations. For example, 42 U.S.C. § 1396a(a)(10)(C) (Medicaid) and 42 U.S.C. § 602(a)(7) (AFDC) provide that the state agency must take into account the "income and resources" available to an applicant in determining need. Subject to certain statutory restrictions,[5] the states are given reasonable latitude in carrying out this determination.

The two Connecticut statutes here in question purport to fall within this final category. Conn.Gen.Stat. § 17–85 reads, in relevant part:

> "Any relative having a dependent child or dependent children, who is unable to

**2.** The court does not have jurisdiction under 28 U.S.C. § 1343(3) to hear a statutory challenge under the Social Security Act, since that statute is not an "Act of Congress providing for equal rights of citizens . . . ." Once a substantial fourteenth amendment claim has been stated, however, § 1343 jurisdiction thereafter exists, and the court may take up statutory claims on the theory of pendent jurisdiction.

**3.** Under the SSA, 42 U.S.C. § 1396a(a)(10), participating states are required to make medical assistance available to "all individuals" receiving federally sponsored welfare assistance. These individuals are referred to as "categorically needy." In addition, states may at their option provide medical assistance for individuals whose income or resources exceed the level allowed for categorical assistance, but who fall within minimum assistance levels once large medical costs are taken into account. These individuals are referred to as "medically needy." Connecticut provides benefits for the medically needy. *See Wilczynski v. Harder,* 323 F.Supp. 509, 514–15 (D.Conn.1971).

**4.** *See* 42 U.S.C. §§ 601, 602(a)(10), and 606(a).

**5.** 42 U.S.C. § 1396a(a)(17)(A)–(B), for instance, limit the states' prerogatives in evaluating income and resources for Medicaid purposes.

furnish suitable support therefor in his own home, shall be eligible to apply for and receive the aid authorized by this part . . . *if such applicant has not made, within seven years prior to the date of such application for aid, an assignment or transfer or other disposition of property without reasonable consideration* or for the purpose of qualifying for an award . . . provided ineligibility because of such disposition shall continue only for that period of time from the date of disposition over which the fair value of such property, together with all other income and resources, would furnish support on a reasonable standard of health and decency." (Emphasis added.)

Conn.Gen.Stat. § 17–109 reads in relevant part:

"Any person shall be eligible for an old age assistance award who . . . (e) has not made, within seven years prior to the date of application for such aid, an assignment or transfer or other disposition of property without reasonable consideration or for the purpose of qualifying for an award. . . . "

The statute then proceeds to incorporate the language of § 17–85 with respect to the disqualification period. As used in these statutes, "reasonable consideration" has been interpreted to mean "fair value," which in turn is defined as "appraised or market value of the property in question, minus recorded encumbrances." [6]

The practical operation of Connecticut's "transfer-of-assets" rule is demonstrated by the experience of four of the named plaintiffs in these actions. The plaintiff Peter Galonek, aged 80, has been disabled since 1943. He lives in a convalescent home in Hartford and receives $174 per month in Social Security disability benefits. Until recently, he was cared for at home by a member of his family. In 1965, when he was still living at home, Galonek's wife became ill and was no longer able to look after him. Galonek then contacted his daughter, who at that time lived in Florida. He purportedly offered to eventually transfer his interest in the home to her, if she would return to Connecticut, care for him, and see to the maintenance and upkeep of the premises. The daughter did return to Connecticut, where for a period of approximately ten years she remained, paying property taxes, making repairs, seeing to Galonek's health, and generally fulfilling their agreement.

In October of 1974, Galonek transferred his one-half interest in the family residence to his daughter for the consideration of $5,000. His subsequent application for Title XIX (Medicaid) benefits was denied by the Connecticut Department of Social Services (DSS), on the grounds that the true value of his interest in the home was $11,843, not $5,000, and that the transfer was for less than "reasonable consideration." [7] It would require several years for Galonek to "work off" this deficiency under the Department's standard cost-of-living formula,[8] and during

6. Connecticut Department of Social Services, Public Assistance Manual, Vol. I, Ch. III, Index 326(A) at 1; *id.* Index 326.1.

7. The DSS will not recognize the daughter's services as valid consideration. Section 326 of the DSS Public Assistance Manual narrows the acceptable forms of consideration to four: cash; mortgage notes; support (provided either in cash or kind, subsequent to the date of transfer); and payment of a valid loan or other debt secured by a note or deed. In *Morgan v. White,* 168 Conn. 336, 362 A.2d 505, Conn.L.J. Vol. XXXVI, No. 42 at 6 (1975), it was held that the foregoing list is too restrictive; in that case, the court recognized an oral contract as valid consideration for a transfer. Here, the DSS concluded that no oral contract as defined under *White* existed.

8. The "Cost of Living Scale" is a schedule which establishes for administrative purposes the amount needed by an individual to sustain a "reasonable standard of health and decency" on a monthly basis. In the case of an individual who has transferred an asset for less than "reasonable consideration," the Cost of Living Scale is used to determine the length of time benefits will be denied. To use a simple example, suppose an applicant for welfare has transferred away an asset within seven years of his application with a market value of $1500. Suppose also that he received $500 in return. If the individual's cost-of-living allowance as established by the DSS scale is $200 per month, then benefits would be denied for five months: the net shortfall in the transfer is $1000, which

this period of time he would remain ineligible for benefits.

Another plaintiff, Richard Bennett, age 86, receives $189 monthly in Social Security old age insurance benefits, which he applies toward $350 of monthly medical expenses.[9] In June of 1972, Bennett sold his family home, receiving proceeds of $34,000. Over the next three years Bennett's assets were frittered away in numerous small transactions, under circumstances which suggest that he was the victim of individuals who took advantage of his gullibility and reduced mental capacity to divest him of his holdings. It is uncontroverted that Bennett is presently without funds and no longer controls any of the assets in question. There is no allegation that he wilfully transferred assets in order to qualify for welfare. Yet, using a $405 monthly "cost-of-living" allowance, Bennett will remain ineligible for Medicaid for a period in excess of eight years.

Another plaintiff, Edith Huckle, lives with her four minor children in Torrington, Connecticut, having moved there from North Carolina in April, 1975. Shortly after her arrival in the state, Mrs. Huckle applied for and began receiving AFDC assistance. At that time she stated in her application that she owned no real property. Some time later, however, the DSS discovered that Mrs. Huckle did own certain property in Brooklyn, New York. Originally her father had held the property, but when he was diagnosed as having terminal cancer he transferred title to the plaintiff, for no consideration. The plaintiff explained, and has so stated in a sworn affidavit, that she was holding this property "in trust" for her mother, a manic-depressive, who it was feared might squander her assets in a moment of grandeur.

Although she explained these facts to the DSS, Mrs. Huckle was told that she must either transfer title to the Department or else remove herself from the AFDC rolls and live off the property. She refused to do this and in late 1975 reconveyed the property to her father, whose prognosis had since improved. About this time, the state terminated Mrs. Huckle's AFDC benefits. She reapplied early in 1976, but was told that her reconveyance to her father, for less than reasonable consideration, disqualified her application. A fair hearing proved unfavorable to the plaintiff, and she has filed an action in Connecticut Common Pleas Court which is currently pending.

Another plaintiff, Mary Buckner, lives in Ashford, Connecticut, with her two minor children. She was twice divorced while living in Colorado, once in 1973 and again in 1975. In each instance, Mrs. Buckner quitclaimed her interest in the family residence to her husband as a part of the marriage dissolution settlement. She stated in her welfare application that no actual value had been surrendered by her in either transfer, since both residences were fully mortgaged. Although she produced all documents in her possession, the DSS refused to authorize payments to Mrs. Buckner, because she failed to offer any "substantiating evidence" concerning the value of the property, other than a copy of the mortgage deed. Through its own efforts, the DSS was able to secure a letter from the husband's attorney in the first divorce proceeding. This letter satisfied the DSS as to the circumstances of the first transfer. The Department could not obtain the cooperation of the attorney in the second action, however, and thus the DSS has continued to list Mrs. Buckner's file as "pending" and has refused to voluntarily qualify her and make payments.

It is important to realize that in none of the pending cases does the DSS allege fraud. Thus, the state does not make any claim, that the transfers in question were made *for the purpose* of qualifying for as-

at $200 per month requires five months to extinguish.

**9.** The plaintiff Bennett is "medically needy." *See* note 3 *supra.*

sistance.[10] The sole basis for the state's denial of benefits to these plaintiffs is that a transfer of property was made within seven years of the application without receipt of "fair value," or else that insufficient information was supplied by the applicant for the state to make a determination.

## ISSUE

The issue presented is thus whether Connecticut's "transfer-of-assets" rule violates the Due Process, Equal Protection or Supremacy Clauses of the Constitution.

## THRESHOLD QUESTIONS

■ The defendant has moved for dismissal on the grounds that the plaintiffs' constitutional claims are frivolous. For the court to concur, it would be necessary for it to find either that the plaintiffs' arguments are directly precluded by controlling authority, or else that they are so clearly insubstantial as to warrant no further consideration. *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973).

The court finds that the present claims are not insubstantial by either of these tests. While most court rulings in the area have been made on Supremacy Clause grounds, the recent case of *Owens v. Roberts,* 377 F.Supp. 45 (M.D.Fla.1974) (three-judge court), held squarely that a Florida statute, very similar to the statute here in question, raised an irrebuttable presumption in violation of due process. This holding does not, *a fortiori,* preclude a result in this case favorable to the defendant. However, it does demonstrate that the plaintiffs' constitutional arguments in this case are clearly not so insubstantial as to deprive this court of jurisdiction.[11]

■ The defendant contends that the statutory questions involved in this case may only be decided by a single-judge court, and not by the present three-judge panel. *Doe v. Westby,* 383 F.Supp. 1143 (D.S.Dak.1974), *vac. and rem.,* 420 U.S. 968, 95 S.Ct. 1385, 43 L.Ed.2d 648 (1975), *on remand* 402 F.Supp. 140 (S.D.1975); *Hagans v. Lavine,* 415 U.S. 528, 543–45, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Cordova v. Reed,* 521 F.2d 621 (2d Cir. 1975). While this is now the generally preferred practice, such an approach here, with a panel already chosen and the case heard, would produce unnecessary delay. Moreover, the policy basis for limiting the scope of questions to be reviewed by three-judge panels has been rendered less pressing by the passage last summer of legislation sharply limiting the use of three-judge courts on a prospective basis. Pub.L. No. 94–381, 90 Stat. 1119 (Aug. 12, 1976). In light of these facts it seems unnecessary to remand on the statutory questions.

## DISCUSSION OF THE LAW

Connecticut's "transfer-of-assets" rule, Conn.Gen.Stat. §§ 17–85 & 17–109(e), prevents Medicaid and AFDC applicants from receiving benefits if they have transferred assets within seven years of their application without receiving "reasonable consideration" in return. The plaintiffs cite a line of cases which stand for the proposition that a state may not, in administering federally sponsored welfare programs, either presume the availability of income or resources not actually available, nor add eligibility criteria not expressly authorized by Congress. *See, e. g., Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Van Lare v. Hurley,* 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Burns v. Alcala,* 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975); *Shea v. Vialpando,* 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120

---

**10.** The Connecticut statutes being challenged both refer to transfers "without reasonable consideration *or* for the purpose of qualifying for an award." (Emphasis supplied.) Only the first of these two grounds for disqualification is involved here.

**11.** In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (Rehnquist, J.), the Court cast doubt on the validity of the doctrine of irrebuttable presumption. Subsequently, however, the Court has seemed to retreat from this view. *See, esp., Lavine v. Milne,* 424 U.S. 577, 584 n. 9, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976).

(1974); *Carleson v. Remillard,* 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *Lewis v. Martin,* 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Shook v. Lavine,* 49 A.D.2d 238, 374 N.Y.S.2d 187 (4th Dept., 1975); *Owens v. Roberts,* 377 F.Supp. 45 (M.D.Fla.1974) (on point); *Wilczynski v. Harder,* 323 F.Supp. 509 (D.Conn.1971); *Solman v. Shapiro,* 300 F.Supp. 409 (D.Conn.), *aff'd per curiam,* 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969). Such presumptions and conditions conflict with federal law in violation of the Supremacy Clause.

Applying this line of cases to the Connecticut statutes, the plaintiffs argue that (1) if receipt of fair value in transfers of assets within seven years of application is viewed as a condition precedent to qualifying for assistance, the requirement must fail since it imposes a condition not expressly authorized by Congress in the SSA or its legislative history; [12] (2) if the statutes are viewed as an effort to define "income and resources" for eligibility purposes,[13] they violate the "available income rule" established in the above-cited cases. Thus by denying eligibility for assistance over a period of time during which a transferred asset would otherwise sustain the applicant, were it still available, the rule assumes the availability of unavailable resources, in clear contravention of the case law doctrine.

The state has argued that its present statutory rule is "reasonable." But the reasonableness of the rule is not in issue. Rather, the question is whether Connecticut's "transfer-of-assets" rule is inconsist-

ent with federal law. This court finds that the Connecticut rule has the effect, if not the avowed intent, of presuming that transferred assets are still available to the transferor. In many cases, such as that of an elderly Medicaid applicant suffering from senility who has been cajoled out of his assets or actually defrauded, the presumption can be a cruel and irrational one. Furthermore, nothing in the SSA, nor in its regulations or legislative history, authorizes such a presumption; hence it violates the federal Supremacy Clause.

It may be pointed out once again that the state does not allege fraud in the pending cases. Were it to so argue, it would be necessary to review the facts in light of *Lavine v. Milne,* 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976). The present posture of the cases before the court does not call for an analysis of this related question. It is sufficient to state the *Milne* does not affect the principal result here.

In policing fraud, a state may indisputably employ reasonable rules and regulations. Even toward this end, however, it may be argued that Connecticut's "transfer-of-assets" rule is unreasonable. Indeed, it seems to stand logic on its head. Under the present system, benefits are frequently denied to an elderly, impoverished, weak, ill or dependent senile class of individuals, once it has been determined that a prohibited property transfer has been made for less than "reasonable consideration."

The defendant's final argument is that, at least with respect to the plaintiffs, Mrs. Huckle and Mrs. Buckner, the Connecticut statutes neither add extra eligibility criteria nor assume the availability of unavailable resources. Instead, they merely require an applicant to provide "proof of

---

**12.** With respect to the regulations, the HEW and its predecessor, the Social Security Board, have consistently interpreted the term "resources" as including only resources which are *actually available.* 45 C.F.R. § 233.-20(a)(3)(ii)(D) (AFDC); 45 C.F.R. § 248.3(b)(i) (Medicaid). Such an interpretation of statutory language by the responsible federal agency is entitled to substantial weight where ambiguity exists in the statute. *Shea v. Vialpando,* 416

U.S. 251, 262 n. 11, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). *See also* 42 U.S.C. §§ 1396a(a)(17)(A)–(B).

**13.** See 42 U.S.C. § 602(a)(7) (AFDC); *id.* § 1396a(a)(10)(C)(i) (Medicaid).

eligibility" in order to receive benefits. It has been held that state authorities may deny welfare benefits to an applicant who refuses to cooperate in providing necessary information. *Wyman v. James,* 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971). Similarly, a state does not violate due process if it denies eligibility to an applicant who fails to discharge the burden of proof placed on him. *Lavine v. Milne, supra.* However, it does not follow that a state may impose unlimited burdens of proof upon welfare applicants, especially where an applicant has cooperated fully in good faith and is not in a position to do more. *Cf. Owens v. Roberts, supra; Doe v. Shapiro,* 302 F.Supp. 761, 764 (D.Conn.1969); *app. dis.,* 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677, *reh. den.,* 397 U.S. 970, 90 S.Ct. 991, 25 L.Ed.2d 264 (1970). A state certainly may not predicate eligibility upon proof of a fact which is not germane under *King* and subsequent cases.

Mrs. Huckle submitted sworn affidavits from herself and her father relating to the circumstances under which she held property "in trust" for her mother in New York City. The defendant refused to accept the affidavits and demanded further documentary proof. The defendant does not allege that this action was fraudulent; thus the only purpose of requiring further proof of the disputed information would be to ascertain whether the property had been transferred for "reasonable consideration." Since this is not a permissible criterion upon which to deny eligibility, as hereinbefore determined, there can be no valid purpose for requiring this information. The principles relating to the Huckle case are therefore essentially no different in the last analysis than those of the *Bennett* and *Galonek* cases.

■ The plaintiff, Mrs. Huckle, has an action pending in the Connecticut Court of Common Pleas with respect to her denial of benefits, and this fact raises the question of equitable restraint. *Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). However, this action has no criminal aspect similar to that in *Huffman v.* *Pursue. See id.* at 604, 95 S.Ct. 1200. Thus it would not be an appropriate instance in which to defer a decision, pending the completion of state action.

The case of Mrs. Buckner is superficially somewhat different from the others. If the facts are accepted as she asserts—that is, if the value of the property transferred by her in her second divorce proceeding was fully encumbered—then the Connecticut DSS concedes that she is eligible for assistance. This is presently being denied to her, the DSS states, because she has failed to provide sufficient information to determine whether or not the property was in fact totally encumbered or whether she owned equity therein at the time of the transfer. This argument is not tenable however, because even if the property were *not* so encumbered, the state would not be authorized under federal law to withhold payments under the available resources rule. There is no evidence in the record, which would indicate that Mrs. Buckner has in any way refused good faith cooperation with Connecticut authorities in providing all necessary information concerning her ownership of any equity in said property.

■ Connecticut's "transfer-of-assets" rule violates the Supremacy Clause by presuming that assets are available to welfare recipients, which are in fact not available. The statutory rule and the information requirements relating to establishing whether or not "reasonable consideration" was received for a particular transfer of property are contrary to federal law standards and found by this court to be unlawful and unenforceable. An appropriate settlement order shall be submitted by the parties within ten (10) days.

The foregoing opinion shall constitute the findings of fact and conclusions of law required to be filed by the court, pursuant to Rule 52(a), Fed.R.Civ.P. SO ORDERED.