440 F.Supp. 1151 (1977)
Peggy J. UDINA, Individually and on behalf of her two (2) minor children, Sandra Udina and Danny Udina, Plaintiffs,
v.
James WALSH, Individually and as Director of the Missouri Department of Social Services, Phyllis Reser, Individually and as Director of the Missouri Division of Family Services, Paul Nelson, Individually and as Director of the St. Louis City Office of the Missouri Division of Family Services, Virginia Allen, Individually and as Director of St. Louis County Office of Missouri Division of Family Services, Defendants.
No. 76-577C(4).
United States District Court, E. D. Missouri, E. D.
November 21, 1977.
As Amended November 29, 1977.
*1152 Stuart R. Berkowitz, Shirley Allen, Walter W. Heiser, The Legal Aid Society of the City & County of St. Louis, St. Louis, Mo., for plaintiffs.
Tom Fulkerson and Robert Northcutt, Missouri Division of Family Services, Jefferson City, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
Plaintiffs brought this suit, pursuant to 28 U.S.C. §§ 1331 and 1343, seeking injunctive and declaratory relief. Plaintiffs contend that § 208.010-2(1)(a) and (b), R.S.Mo. (1974) is inconsistent with the federal Social Security Act, 42 U.S.C. § 601 et seq. and is therefore invalid under the Supremacy Clause of the United States Constitution. Additionally, plaintiffs contend that the statute violates the due process and equal protection clauses of the United States Constitution.
In accordance with Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), plaintiffs' Supremacy Clause claim was presented, by way of stipulation, to this Court without convening a three-judge Court. After considering the stipulations presented herein, the Court makes the following findings of fact and conclusions of law:

FINDINGS OF FACT
1) Plaintiffs are all citizens of the United States and residents of the state of Missouri. Plaintiffs all bring suit individually and on behalf of their minor children. Defendant Lawrence Graham is the Director of the Missouri Department of Social Services. Defendant Ewing Gourley is the Director of the Missouri Division of Family Services. Defendant Paul Nelson is the Director of the St. Louis City Office of the Missouri Division of Family Services. Defendant Sam Crawford is the Director of the St. Louis County Office of the Missouri Division of Family Services.
2) The state of Missouri participates in a jointly funded federal-state AFDC [Aid to Financially Dependent Children] program established by Title IV, 42 U.S.C. § 601 et seq. and § 208.040, R.S.Mo. (1973). The state of Missouri also participates in a jointly funded federal-state Medical Assistance program established by Title IV, 42 U.S.C. § 1396a, et seq. and § 208.151 et seq., R.S.Mo. (1973). The AFDC program provides funds to the state for the provision of financial assistance to families in which the support of a parent or parents has been deprived. The Medical Assistance program provides reimbursement for medical services rendered to needy individuals who are not on any type of public assistance.
*1153 3) Plaintiff Peggy J. Udina owned a piece of property located at 1549 Kellen Street. The property was purchased for $13,490.00. As of June 4, 1974, the unpaid balance was $7,495.62. On June 4, 1974, plaintiff Udina transferred the property to her mother Celeste Pace.
4) Plaintiff Anna Lee Saggan received $2,864.00 from an insurance settlement in the fall of 1974. Plaintiff Saggan opened two joint bank accounts in the names of herself and her two daughters, J. Z. Meyers and B. A. Barcykowski. At the time they were opened, the two bank accounts totalled approximately $2,300.00. On February 5, 1975, the two bank accounts, then totalling $1,301.84 were closed and a third bank account was opened in that amount in the names of Ms. Saggan's daughters jointly.
5) Plaintiff Norma Jean Henderson had savings certificates in her name in the amount of $9,639.60. In the latter part of 1974 the accounts were closed and the proceeds were given to Ms. Henderson's father, Clyde Gardner. Ms. Henderson did not retain any of the funds. Plaintiff Henderson and her three children had been receiving AFDC and Medicaid benefits since April, 1974.
6) Plaintiff Phyllis Ann Enders owned property at 4420 Osceola in St. Louis. The property had been purchased jointly by plaintiff and her former husband, William Enders, on January 29, 1973 for $9,500.00. William Enders transferred his interest in said property to plaintiff on February 27, 1975 as a part of a divorce settlement. Plaintiff transferred all of the Osceola property to William Enders on April 14, 1975 because she was unable to pay the mortgage payments due. The balance owed as of April, 1975, on the house was $8,218.27.
7) Section 208.010-2 provides:
Benefits shall not be payable to any claimant who:
(1)(a) Has, or whose spouse with whom he is living has, encumbered, assigned, conveyed, or transferred real or personal property, of which he is the record or beneficial owner, or any interest therein of any value within five years preceding the date of the investigation without receiving fair and valuable consideration. The date of recording or filing of any instrument affecting property that is encumbered, assigned, conveyed or transferred by written instrument shall be considered as the date such encumbrance, assignment, conveyance or transfer occurred. "Fair and valuable consideration" as used herein means money or real or personal property received at the time of the transaction approximately equal to the value of the property encumbered, assigned, conveyed or transferred, and shall not for the purpose of this section be construed to include support, services, or other advancements made or to be made by a relative to a claimant. A payment of a loan to a relative may be recognized and eligibility not affected if the claimant can establish to the satisfaction of the division of family services that the loan was bona fide and the proceeds of the loan were used by the claimant for his or his dependent's support or benefit.
(b) Has made, or whose spouse with whom he is living has made, such encumbrance, assignment, conveyance or transfer shall be ineligible to receive benefits under this section for the number of months within five years from the date of the encumbrance, assignment, conveyance or transfer, as the amount of the encumbrance, or as the value of the property is determined by the division of family services, is divisible by the average monthly grant paid in the state at the time of the investigation to an individual under the program for which benefits are claimed; provided, that in the discretion of the division of family services a claimant may become eligible to receive benefits if the encumbrance is satisfied and released, or if the property assigned, conveyed, transferred, or property of equal value, is reconveyed or its equivalent value returned to the claimant; provided further, that no needy dependent child shall be deemed ineligible to receive benefits *1154 by reason of any encumbrance, assignment, conveyance or transfer made by a relative other than his parent.
8) Plaintiff Udina applied for benefits on June 24, 1975. Her application was rejected on September 24, 1975 because of the transfer of property at 1549 Kellen to her mother without receipt of fair and valuable consideration. On October 2, 1975, plaintiff Udina requested a hearing which was held on December 3, 1975. Plaintiff Udina stated that she transferred the house because her employment was transferred to another location and she moved to be closer to work, and because her mother had been paying a considerable amount of her bills and she felt that she owed something to her mother. It was determined that the payment of bills were not clearly loans, and that the transfer of the house was not a repayment for loans, but a gift. Accordingly, the decision to reject plaintiff Udina's application for AFDC benefits was upheld.
9) Plaintiff Henderson was notified by letter of September 24, 1974 that her AFDC benefits were going to be suspended pending further investigation of available resources. A pre-termination hearing was held on November 22, 1974 and on February 10, 1975, a decision was issued, stating "The decision to suspend case at time PA-75a was sent on basis of available resources was justified. However, as client states none of the former resources which were considered available to her now exist, her current eligibility on this factor should be explored". On February 19, 1975, plaintiff Henderson received a letter stating that her case was to be closed because she had transferred available resources in the amount of $9,639.60 without receipt of fair and valuable consideration. Plaintiff Henderson, at a hearing, contended that the money involved had never been hers. The money had been earned by her father, Clyde Gardner and that due to family difficulties, the names on the accounts were changed from Mr. Gardner only, to Mr. Gardner and his second wife, and then to plaintiff Henderson's name. Henderson stated that she did not contribute to the accounts, nor withdraw proceeds therefrom, and that she never had control of the pass books. The following findings of fact were made:
The money was Mr. Gardner's but was in saving certificates in claimants [sic] name. She took out a loan as per her fathers [sic] instructions, on December 19, 1973 for $4,742.92 using saving certificates as collateral and gave the money to her father. On December 9, 1974 the savings certificates were liquadated [sic] and the remainder of the loan $4,087.56 was paid off. The difference of $2.092.33 [sic] was given to her father.
The decision was made to affirm the decision to end her AFDC benefits because
Claimant had savings certificates in her name, took out a loan for $4,742.92 using the certificates as collateral, which she gave to her father. The certificates were later cashed in by claimant, the loan paid off and the difference given to her father. Claimant transferred $6,835.36.
10) Plaintiff Enders's application was rejected in July or August of 1975. The decision was affirmed, following a hearing, on February 27, 1976. The loan balance due on the property at the time that Enders conveyed the same to her ex-husband was $8,218.27. It was therefore found that Enders had transferred $1,281.73 without receiving fair and valuable consideration.
11) Plaintiffs Udina, Henderson and Enders satisfy and have continuously satisfied all eligibility requirements for AFDC benefits except that each has transferred property within five years of the application for benefits without receiving fair and valuable consideration.
12) Plaintiff Saggan satisfies and has continuously satisfied all eligibility requirements for Medical Assistance benefits except that she transferred property within five years of her application for said benefits without receiving fair and valuable consideration.

CONCLUSIONS OF LAW
This Court has jurisdiction over the subject matter and the parties to this action in *1155 accordance with 28 U.S.C. § 1343. Buckner v. Maher, 424 F.Supp. 366 (D.Conn.1976); Owens v. Roberts, 377 F.Supp. 45 (M.D.Fla. 1974); McLaughlin v. Wohlgemuth, 398 F.Supp. 269 (E.D.Pa.1975), vacated on other grounds, 535 F.2d 251 (3d Cir. 1976).
Title 42 U.S.C. § 602(a)(10) mandates that state plans for AFDC provide "that aid to families with dependent children shall . . be furnished with reasonable promptness to all eligible individuals". [emphasis added]. Title 42 U.S.C. § 1396a(a)(10) requires that a state furnishing medical assistance make such "medical assistance available to all individuals receiving aid or assistance" under AFDC. Thus, eligibility for medical assistance is established if an individual is eligible for AFDC.
In determining such eligibility,
. . . only such net income as is actually available for current use on a regular basis will be considered . . . 45 C.F.R. § 233.90(a). [emphasis added].
See also 45 C.F.R. 248.3(b)(1) applicable to medical assistance; King v. Smith, 392 U.S. 309, 319 n.16, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).
While states are free to determine the standard of need, or "the amount deemed necessary by the state to maintain a hypothetical family at a subsistence level", Shea v. Vialpando, 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120, and the level of benefits, National Welfare Rights Organization v. Mathews, 174 U.S.App.D.C. 410, 533 F.2d 637 (1976), the definition of eligibility set forth in the federal statutes and regulations is determinative.
The Missouri statute applies both to individuals who transferred property in order to receive benefits, and to those who transferred property for reasons unconnected with the receipt of benefits. Were the statute applicable only to those who had transferred property in order to receive benefits, thus introducing the element of fraud, a different issue would be presented. See Owens v. Roberts, supra at 54, fn. 12; Buckner v. Maher, supra at 371.
In Owens v. Roberts, supra, the court invalidated a Florida statute, on the ground of inconsistency with the Social Security Act, where the statute provided that a transfer of assets for any reason within two years of the application for benefits shifted the burden to the applicant to establish that the transfer was not for the purpose of establishing eligibility for assistance. The court stated:
Nowhere in the Social Security Act or in the HEW regulations is there any intimation that the mere transfer of assets within two years prior to or during the receipt of assistance is to operate as a lever which thrusts the burden of explanation therefor on the applicant. The only facts in determining whether a claimant is "needy" are income and the amount of currently retained assets. [citation omitted]. Failure to adequately explain why an asset was transferred is not a determinative factor. Therefore, under these HEW regulations, if a person does not possess the threshold amount of resources and his income falls below a certain level, he is qualified for assistance regardless of whether there has been a recent transfer of an asset, assuming that person is otherwise aged, blind, disabled or has a family with dependent children. Id. at 55. [emphasis added].
In Buckner v. Maher, supra, plaintiffs challenged a Connecticut statute which provided for AFDC benefits only "if such applicant has not made, within seven years prior to the date of such application for aid, an assignment or transfer or other disposition of property without reasonable consideration or for the purpose of qualifying for an award . . .". Id. at 369. This statute was held to be inconsistent with the Social Security Act and thus in violation of the Supremacy Clause. The court noted that the state "may not, in administering federally sponsored welfare programs, either presume the availability of income or resources not actually available, nor add eligibility criteria not expressly authorized by Congress". Id. at 372. Since the statute established a presumption that these assets were available, it was held to violate the Supremacy Clause.
*1156 Defendants herein concede in their brief that the Missouri statute "creates an eligibility requirement for public assistance . . ." but argue that a state may impose any eligibility requirements not prohibited by the Social Security Act. In support thereof, defendants cite New York State Department of Social Service v. Dublino, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973); Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971); Snell v. Wyman, 281 F.Supp. 853 (S.D.N.Y.1968), aff'd, 393 U.S. 323, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969). It is the Court's conclusion that these cases are all distinguishable.
In Dublino, supra, challenge was made to the New York Work Rules which established a presumption that certain recipients of public assistance were employable, and required those recipients to follow certain procedures with reference to employment before receiving benefits. The Social Security Act contained a similar program. Plaintiffs contended that the New York Work Rules had been preempted by the Social Security Act. The Court held that there had not been preemption, stating that the state program was supplementary and complementary to the federal program. The Court distinguished the situation from one in which state law excludes individuals from receiving benefits where, under the Social Security Act, they were so entitled; the Court stated that neither the Act, nor the legislative history of the Act, entitled a state to impose additional eligibility requirements, whereas the Act did allow for complementary work incentive programs.
In Wyman v. James, supra, plaintiffs challenged a New York law which conditioned continued assistance upon periodic home visits by a caseworker. The challenge to the statute was premised upon a claimed violation of the Fourth Amendment. The Court rejected the argument.
In Snell v. Wyman, supra, the validity of New York statutes requiring welfare recipients to repay benefits from specified assets was challenged. The statutes applied to "property already owned or to acquisitions which have more or less the character of `windfalls' . . .". Id. at 867. The Court held that these statutes did not violate the Supremacy Clause. The statutes did not preclude eligibility; they simply authorized the imposition of a lien upon certain property which had been or would be acquired. Thus, the statutes did not impose an additional eligibility requirement, as the Missouri statute attempts to do herein.
It is the Court's conclusion that § 208.010-2(1) is inconsistent with the Social Security Act in that it establishes an additional requirement for eligibility. Thus, it violates the Supremacy Clause and is void. An appropriate order will issue.

ORDER
Pursuant to the memorandum filed this date,
IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Section 208.010-2(1), R.S.Mo. (1974) is invalid under the Supremacy Clause of the United States Constitution.
IT IS FURTHER ORDERED, ADJUDGED, and DECREED that defendants, their successors in office, agents and employees are enjoined from taking any action whatsoever to deny Aid to Financially Dependent Children benefits or Medicaid benefits to plaintiffs due to the transfer of property without receipt of fair and valuable consideration.
IT IS FURTHER ORDERED that defendant shall pay the costs herein.
IT IS FURTHER ORDERED that the effective date of this order shall be stayed for thirty (30) days from this date.