Julia FABULA Individually and on behalf of all others similarly situated, Plaintiff,

and

Anna Arnold, by her guardian, Mami Younger, and Mary M. Bruns, and Laura J. Maggitti, Intervening Plaintiffs,

v.

Dr. Neil SOLOMON, Individually and in his capacity as Secretary of the Department of Health and Mental Hygiene, State of Maryland.

Civ. No. B–77–1849.

United States District Court,
D. Maryland.

Nov. 15, 1978.

Anne K. Pecora, Legal Services to the Elderly, and James J. Lyko, Administrative Law Center, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiffs.

Francis B. Burch, Atty. Gen. of Maryland, and Louise T. Keelty, Asst. Atty. Gen., Baltimore, Md., for defendant.

BLAIR, District Judge.

This action challenges the validity of a Maryland state regulation concerning transfers of assets held by individuals applying for or receiving medical assistance benefits. Plaintiffs assert that the regulation in question conflicts with federal statutes and regulations governing medical assistance, thus

violating the supremacy clause of the Constitution, and further assert that the regulation denies them equal protection and due process. The parties have agreed to submit the issue to the court on the pleadings heretofore filed. No material facts are in dispute.

Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396k establishes the federal medical assistance, or Medicaid, program. Medicaid is a cooperative federal-state program, operated under state direction, which provides medical assistance benefits to eligible persons. Although a state is not required to participate in the program, if it does choose to participate, it must submit a plan that complies with federal law. 42 U.S.C. § 1396a. Such a plan must provide for medical assistance to individuals receiving or eligible for receipt of federally funded public assistance benefits, who are referred to as the "categorically needy." 42 U.S.C. § 1396a(a)(10)(A); 42 C.F.R. § 448.-1(a)(1)(i). Included in this group are aged, blind, and disabled individuals receiving Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383c. If a state chooses to adopt a Medicaid program, it has the further option of including within the plan any group of individuals considered "medically needy" but whose incomes and assets exceed the eligibility limits applicable to the categorically needy.[1] If the state exercises its option to provide benefits to this group, it must adhere to certain federal requirements applicable to the group. 42 U.S.C. § 1396a(a)(10)(C). In summary, a state plan *must* provide Medicaid benefits to aged, blind, and disabled persons who receive or are eligible for SSI benefits. Additionally, it *may* provide such benefits to aged, blind, and disabled persons whose in-

1. The categorically needy and medically needy are defined as follows:

In order to be considered as categorically needy for purposes of title XIX, an individual must in general be receiving financial assistance or sufficiently in need to be financially eligible for financial assistance under title IV–A or XVI of the Social Security Act, or under a State supplement to title XVI assistance.

42 C.F.R. § 448.1(a)(1)(i).
An individual is considered to be medically needy if he has income and resources which exceed the amount of income and resources allowed to the categorically needy but which are insufficient to meet the costs of necessary medical and remedial care and services.
42 C.F.R. § 448.1(a)(2)(i).

comes and assets are too low to meet their medical expenses but too high to qualify them for SSI benefits. In either case, the state plan must conform to federal requirements. *See generally Friedman v. Berger,* 547 F.2d 724, 726 (2d Cir. 1976), *cert. denied,* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977); *Aitchison v. Berger,* 404 F.Supp. 1137, 1141 (S.D.N.Y.1975), *aff'd,* 538 F.2d 307 (2d Cir.), *cert. denied,* 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976); *Wilczynski v. Harder,* 323 F.Supp. 509, 514–15 (D.Conn. 1971).

The State of Maryland has elected to adopt a state medical assistance plan, administered by the Secretary of Health and Mental Hygiene. *Annotated Code of Maryland,* art. 43, § 42 (Cum.Supp.1977). As implemented by regulations promulgated by the Secretary, *Code of Maryland Regulations* (COMAR), Title 10, Subtitle 09, the Maryland program provides benefits to a class of medically needy persons who meet certain eligibility requirements, COMAR 10.09.01.06. Among those requirements are ones concerning income, COMAR 10.09.01.-06, and assets, COMAR 10.09.01.10. The latter provision is the regulation at issue in this case.[2]

Under the Maryland regulation governing assets, a single person may retain assets of $2500 and remain eligible for benefits under the program for the medically needy. COMAR 10.09.01.10(F). Excluded from the computation of assets are the individual's home and income-producing real property, as well as other items. COMAR 10.09.01.-10(B). A further subsection of the regulation, COMAR 10.09.01.10(D), containing the provision that plaintiffs challenge, provides that a transfer of assets will, under certain conditions, render an applicant or recipient ineligible for medical assistance. This sec-

tion denies eligibility to an applicant for benefits who has within three years of application transferred an asset that would have been available to meet medical expenses or serve as a source of future recovery by the state of benefits paid,[3] provided the transfer was made with the intent of becoming eligible for benefits or circumventing recovery procedures. A number of factors are to be considered in determining the purpose of the transfer. A similar provision denies continued eligibility to recipients of medical assistance benefits who transfer assets with the proscribed intent. In either case the period of ineligibility extends for at most three years. Administrative hearing procedures are established by COMAR 10.09.01.16.

Defendant in this action, Dr. Neil Solomon, is Secretary of the Department of Health and Mental Hygiene of the State of Maryland. Plaintiffs Julia Fabula, Anna Arnold, and Mary Bruns are all over the age of 65 years. Each would be eligible for SSI benefits but for their incomes and because of their incomes, they are not eligible for Medicaid for the categorically needy. Each of these plaintiffs transferred all or part of her interest in her home within three years of the date she applied for Medicaid under Maryland's program for the medically needy. The homes, had they been retained by the owners, would have been excluded from consideration in determining eligibility. COMAR 10.09.01.10(B)(1). However, each plaintiff was denied assistance on the basis of COMAR 10.09.01.-10(D)(1). Plaintiff Laura Maggitti, also over 65 years of age, would also be eligible for SSI, and hence Medicaid for the categorically needy, were her income not in excess of SSI eligibility requirements. Mrs. Maggitti was already receiving Medicaid

---

**2.** COMAR 10.09.01.10 is attached as an appendix.

**3.** A state, subject to certain conditions, may attempt to recover from the estate of a deceased Medicaid recipient any medical assistance payments that were paid at a time when the recipient was 65 years of age or older. 42 U.S.C. § 1396a(a)(18). Maryland provides for such recovery. COMAR 10.09.01.17(C). Re-

covery may be sought from the estates of the categorically needy and medically needy alike. The recovery provision evidently embodies an equitable notion that it is fair to seek recovery from an individual's estate of benefits paid, after that person had been allowed to hold certain assets which otherwise could have been applied to his medical care.

benefits for the medically needy when she transferred part of her interest in an income-producing rental property, which had been excluded from consideration as an asset under COMAR 10.09.01.10(B)(2). Following that transfer, plaintiff was denied continued eligibility for Medicaid benefits, based on COMAR 10.09.01.10(D)(2). The parties have stipulated that, assuming the plaintiffs were competent at the time of transfer, the transfers were made with the intent of becoming eligible for benefits or to circumvent the recovery procedures of the medical assistance program.[4] Thus, for purposes of this memorandum, the court will assume that plaintiffs were covered by the terms of the regulation and that plaintiffs' attack is squarely upon those terms.

Although persons in the position of the plaintiffs, *i. e.,* the medically needy, are subject to the requirements of COMAR 10.-09.01.10(D), persons receiving SSI benefits, thus included within the categorically needy, are not subject to the regulation. *Compare* COMAR 10.09.01.06(A) *with* COMAR 10.09.01.02(A)(3). Plaintiffs assert that this distinction between the categorically needy and the medically needy violates federal law, in a manner discussed in detail below, and also violates equal protection. The court finds the equal protection claim sufficiently substantial to confer jurisdiction over both the constitutional claims and the pendent statutory claims. *See Hagans v. Lavine,* 415 U.S. 528, 537–43, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Greklek v. Toia,* 565 F.2d 1259, 1260–61 (2d Cir. 1977), *cert. denied,* 435 U.S. 949, 98 S.Ct. 1574, 55 L.Ed.2d 799 (1978). Thus, jurisdiction exists under 28 U.S.C. § 1343(3).[5] Plaintiffs are not required to have exhausted state administrative remedies prior to bringing this action. *King v. Smith,* 392 U.S. 309, 312 n. 4, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

Plaintiffs Fabula, Arnold, and Bruns seek to represent a class of medical assistance applicants, and plaintiff Maggitti has moved to represent a class of medical assistance recipients. The court will certify the following two classes under Fed.R.Civ.P. 23(b)(2):

1. All aged, blind, or disabled Maryland residents who have been denied Maryland medical assistance or will be denied Maryland medical assistance solely on the basis that they transferred or assigned assets, excluded from consideration in determining eligibility by COMAR 10.09.01.10(B), in a manner proscribed by COMAR 10.09.01.10(D)(1). This class is represented by plaintiffs Fabula, Arnold, and Bruns.

2. All aged, blind, or disabled Maryland residents who have been denied Maryland medical assistance or will be denied Maryland medical assistance solely on the basis that they transferred or assigned assets, excluded from consideration in determining eligibility by COMAR 10.09.01.10(B), in a manner proscribed by COMAR 10.09.01.10(D)(2).

This class is represented by plaintiff Maggitti. The court finds adequate evidence to support the numerosity requirement of Rule 23(a); common questions of law and fact exist; the named plaintiffs' challenges are typical of all class members; and plaintiffs are adequate class representatives. Finally, the defendant has acted in a manner generally applicable to the class.

Plaintiffs' primary contention is that the Maryland transfer of assets provision embodied in COMAR 10.09.01.10(D) violates federal statutes and regulations. Although the Medicaid program is adopted at a state's option, once implemented it must, of course, comply with federal requirements. *See, e. g., King v. Smith,* 392 U.S. 309, 333 & n. 34, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

---

4. Because retention of the property at issue would not have affected plaintiffs' eligibility for benefits, it would appear that the circumvention of recovery procedures is the practice sought to be eliminated by the regulation as applied to the plaintiffs.

5. Jurisdiction also arguably exists under 28 U.S.C. § 1331(a). *See Aitchison v. Berger, supra,* 404 F.Supp. at 1143 n. 15.

Plaintiffs argue first that the application of Maryland's transfer of assets regulation to their classes imposes a condition upon eligibility for medical assistance which is additional to those conditions permitted by federal law. More specifically, they argue that applicable federal statutes and regulations require that the eligibility conditions imposed upon the medically needy be no more stringent or numerous than those placed upon the recipients of SSI benefits. Because the Maryland regulation applies to persons, like the plaintiffs, who are medically needy but not to persons receiving SSI benefits, the regulation is said to impose an additional eligibility condition upon the medically needy in violation of federal law.

Plaintiffs rely on 42 U.S.C. § 1396a(a)(10)(C)(i), which sets forth one required provision of a state plan for medical assistance, and its implementing regulation, 42 C.F.R. § 448.2(b)(2). The statute requires that a state plan which includes medical assistance to the medically needy must provide "for making medical assistance available to all individuals who would, except for income and resources, be eligible for [SSI benefits], and who have insufficient . . . income and resources to meet the costs of necessary medical and remedial care and services."[6] The regulation amplifies the statute, providing that a state plan must satisfy the following requirement: "Except for financial eligibility, the conditions of eligibility that are imposed on elective groups [i. e., the medically needy] . . . (2) [i]n the case of aged, blind, or disabled individuals, are not more stringent or more numerous than those imposed on such individuals receiving [SSI] benefits under Title XVI. . . ." 42 C.F.R. § 248.2(b)(2). Plaintiffs contend that COMAR 10.09.01.10(D) is such a condition of eligibility. The Maryland regulation itself applies only to the medically needy, not to recipients of SSI benefits, and Maryland places no comparable restriction on recipients of SSI benefits. Furthermore, there is no federal statute or regulation concerning transfers of assets that is relevant to the issues presented in this case.[7]

Plaintiffs make the further argument that the Maryland regulation creates an invalid assumption that certain resources are available to apply to medical costs when those resources are not available in fact. Federal law requires that a state medical assistance plan, in determining eligibility for benefits, "provide for taking into account only such income and resources as

---

**6.** 42 U.S.C. § 1396a(a)(10) provides in pertinent part:

A State plan for medical assistance must—
(10) provide—
(A) for making medical assistance available to all individuals receiving aid or assistance under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV of this chapter, or with respect to whom supplemental security income benefits are being paid under subchapter XVI of this chapter;
(B) that the medical assistance made available to any individual described in clause (A)—
(i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and
(ii) shall not be less in amount, duration, or scope than the medical assistance made available to individuals not described in clause A; and
(C) if medical assistance is included for any group of individuals who are not described in clause (A) and who do not meet the income and resources requirements of the appropriate State plan, or the supplemental security income program under subchapter XVI of this chapter, as the case may be, as determined in accordance with standards prescribed by the Secretary—
(i) for making medical assistance available to all individuals who would, except for income and resources, be eligible for aid or assistance under any such State plan or to have paid with respect to them supplemental security income benefits under subchapter XVI of this chapter, and who have insufficient (as determined in accordance with comparable standards) income and resources to meet the costs of necessary medical and remedial care and services, and
(ii) that the medical assistance made available to all individuals not described in clause (A) shall be equal in amount, duration, and scope . . . ..

**7.** The sole statute and regulation concerning transfers of assets by individuals applying for SSI benefits are 42 U.S.C. § 1382b(b) and 20 C.F.R. § 416.1242, which require disposition of certain property as a precondition to establishing eligibility for SSI benefits.

are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient . . .." 42 U.S.C. § 1396a(a)(17). A regulation adopted pursuant to this section requires, concerning the eligibility of both the categorically needy and the medically needy, that the state plan must "[p]rovide that only such income and resources as are actually available will be considered. . . ." 42 C.F.R. § 448.3(b)(1).

Plaintiffs also note that under 42 C.F.R. § 448.3(c)(1)(iv), with respect to the medically needy, a state plan must "(1) [p]rovide levels of income and resources for maintenance, in total dollar amounts, as a basis for establishing financial eligibility for medical assistance. Under this requirement: . . (iv) Resources which may be held must, as a minimum, be at the higher of the levels allowed under the State plan approved under Title IV–A [of the Social Security Act, 42 U.S.C. §§ 601–610 (the Aid to Families with Dependent Children program)] or allowed in the supplemental security income [SSI] program established under Title XVI of the Social Security Act. . . ." The impact of the regulation in Maryland is that medically needy applicants and recipients under the medical assistance plan must be permitted to hold resources at least equal to those permitted to be held by recipients of SSI benefits.

Several courts have considered the validity of state regulations concerning transfers of assets by persons otherwise eligible for state public assistance programs. In *Buckner v. Maher*, 424 F.Supp. 366 (D.Conn. 1976), aff'd, 434 U.S. 898, 98 S.Ct. 290, 54 L.Ed.2d 184 (1977), a three-judge court struck down a Connecticut statute concerning transfers of assets by applicants for medical assistance, as well as a similar statute covering the state Aid to Families with Dependent Children program. The Medicaid statute made ineligible any applicant for benefits who within seven years prior to application had assigned or transferred property "without reasonable consideration." After noting that the state did not claim that plaintiffs' transfers had been made for the purpose of gaining eligibility for assistance,[8] the court held the statute invalid because it assumed the existence of available assets that were not available in fact. A similar result was reached in *Udina v. Walsh*, 440 F.Supp. 1151 (E.D.Mo.1977), where the court upheld a challenge to a Missouri statute denying Medicaid and AFDC benefits to persons who within five years of application had transferred property "without receiving fair and valuable consideration." Finally, in *Owens v. Roberts*, 377 F.Supp. 45 (M.D.Fla.1974), a three-judge court held invalid a Florida statute and regulation concerning AFDC and Old Age Assistance benefits. The statute provided that any transfer of property within two years of application for benefits or during receipt of benefits created a rebuttable presumption that the transfer was made for the purpose of becoming or remaining eligible for benefits. The regulation went farther, converting the rebuttable presumption into an irrebuttable one. The court held the statute and regulation to be both unconstitutional and in conflict with the Social Security Act.[9]

A significant distinction exists between this case and the three cases just noted. The regulation at issue here denies eligibility for benefits only when the state finds the purpose of a transfer to have been for the purpose of gaining or maintaining eligibility or avoiding lawful recovery procedures. The statutes and regulations found invalid in *Buckner, Udina,* and *Owens,* however, did not require the state to make a finding of some impermissible motive for the transfer. In fact, each court was careful to note that a different case would have

---

8. The statute also disqualified applicants who had transferred property "for the purpose of qualifying for [an award.]" This portion of the statute was not challenged. 424 F.Supp. at 371–72.

9. The court's holding concerning the constitutionality of the statute's rebuttable presumption is questionable in view of the Supreme Court's subsequent decision in *Lavine v. Milne,* 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976).

been presented had the statutes and regulations at issue denied eligibility only upon a finding that transfers were made for the purpose of qualifying for benefits. *Udina v. Walsh, supra,* 440 F.Supp. at 1155; *Buckner v. Maher, supra,* 424 F.Supp. at 371–72, 373; *Owens v. Roberts, supra,* 377 F.Supp. at 54 n.12. On the other hand, none of those cases raised the contention, as brought in this case, that the state had created impermissible distinctions between or among various classes of welfare applicants and recipients. *See Greklek v. Toia, supra,* 565 F.2d at 1261.

Plaintiffs' major contention is that the Maryland regulation is invalid because it applies only to the medically needy and not to the categorically needy. Section 1396a(a)(10)(C)(i) of Title 42 provides that if medical assistance coverage is made available to the medically needy, then assistance must be provided to all individuals who would "except for income and resources", be eligible for SSI benefits. This requirement is amplified by 42 C.F.R. § 448.2(b)(2), which provides that "[e]xcept for financial eligibility", the conditions of eligibility imposed on the medically needy covered by the state plan may not be additional to or more stringent than those imposed on individuals receiving SSI benefits. Thus, the state may impose on the medically needy only more stringent financial eligibility requirements than it imposes on the categorically needy; it is not permitted to establish other types of eligibility conditions.

The defendant contends that the transfer of assets provision is a condition of financial eligibility which federal law allows the state to impose. Obviously, the regulation broadly concerns retention of assets, thereby touching upon a financial consideration as opposed to a factor related to the physical characteristics of an applicant or recipient or some other non-monetary factor. It is obviously quite different from a standard setting age, blindness, or disability criteria, for example. By placing a limitation upon the circumstances under which an individual may transfer resources, the regulation imposes a condition of financial eligibility in a sense. The state also notes that transfer of assets regulations in other contexts, unrelated to state efforts to regulate fraudulent transfers, have been considered financial conditions. The Social Security regulation concerning disposition of assets as a precondition for SSI eligibility, 20 C.F.R. § 416.1242, is categorized under "Subpart L.—Resources and Exclusions" of the regulations concerning SSI benefits. The cases discussed previously which struck down state transfer of assets regulations not limited in coverage to improper transfers all treated the regulations at issue as conditions of financial eligibility. *See Udina v. Walsh, supra; Buckner v. Maher, supra; Owens v. Roberts, supra.*

Based on these considerations alone, and assuming that the regulation is a condition of eligibility which must be categorized as either financial or nonfinancial, the court would conclude that it is a condition of financial eligibility. The plaintiffs, however, refer to comments published by the Department of Health, Education and Welfare in the Federal Register. Referring to 42 U.S.C. § 1396a(a)(10)(C)(i) as it applies to whether income and resources of an individual's spouse or parents may be considered available to the other spouse in determining eligibility, the Department stated: "[A]ll aged, blind and disabled persons applying in States covering all SSI eligibles must have their eligibility determined using all SSI eligibility rules except for—and only except for—higher dollar amounts for income and resource eligibility levels." 42 Fed.Reg. 2685 (1977). Thus, according to this interpretation the only condition which may vary permissibly between the medically needy and the categorically needy is one which establishes higher dollar amounts for income and resource eligibility standards for the medically needy. Because the Maryland transfer of assets regulation certainly does not establish eligibility requirements in dollar amounts, the Department's interpretation of federal law suggests that the state provision is not a condition of financial eligibility.

But if COMAR 10.09.01.10(D) is not a condition of financial eligibility, the court

concludes that it is not a true condition of eligibility of any sort as contemplated by the federal statute and regulation. It is not a substantive eligibility requirement, as are state provisions directly establishing income and resource requirements, e. g., COMAR 10.09.01.06; 10.09.01.10(A), (B), (E); 10.09.01.11; 10.09.01.12, 10.09.01.13, or as are federal and state regulations defining age, blindness, and disability, e. g., 45 C.F.R. §§ 233.30, 233.70, 233.80; COMAR 10.09.01.01(D), (J), (S). *See Lavine v. Milne*, 424 U.S. 577, 579, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976). The provision creates no absolute requirement which must be satisfied in order to gain or retain eligibility for benefits; it sets no fixed precondition. Rather, it is a provision designed to eliminate fraudulent practices affecting eligibility for benefits or the state's right to recoup benefits paid. An individual who does not transfer assets with the intent of gaining or maintaining eligibility or evading recovery procedures is not subject to the penalties enacted in the regulation. From an analysis of the structure of Title XIX as a whole, as well as the language of § 1396a and the regulation, it appears that the federal statute and regulation are concerned with substantive eligibility requirements only. The statute and regulation do not purport to place any specific restrictions on the state's right to police fraud, and the court finds no implied restrictions. Therefore, the court concludes that COMAR 10.09.01.10(D) is in the nature of a procedural regulation which is not prohibited by 42 U.S.C. § 1396a(a)(10)(C)(i) or 42 C.F.R. § 448.2(b)(2).

Furthermore, the Maryland transfer of assets regulation does not assume that non-existent resources are in fact available to applicants and recipients. The regulation does not penalize individuals for merely transferring assets; it does not require that every transfer of assets be for reasonable value; it does not presume that a transfer should result in proceeds that would be available to an individual for medical expenses. Rather, it is designed simply to deter the intentional circumvention of lawful state procedures. Therefore, the court finds no inconsistency with 42 U.S.C. § 1396a(a)(17) or 42 C.F.R. § 448.3(b)(1). For the reasons noted above, this case presents circumstances quite different from those of *Udina v. Walsh, supra; Buckner v. Maher, supra*; and *Owens v. Roberts, supra.*

As stated previously, federal law requires that the state permit the medically needy to hold resources having at least the value of resources which the categorically needy may hold. 42 C.F.R. § 448.3(c)(1)(iv). *See Schaak v. Schmidt*, 344 F.Supp. 99 (E.D. Wis.1971).

Moreover, in establishing eligibility standards for the medically needy, the state must exclude those resources which the SSI program defines as exclusions. 42 C.F.R. § 448.3(c)(3)(ii).[10] Maryland fully complies with federal law in allowing both the categorically needy and the medically needy to consider homes and income producing real property as resources excluded from the determination of eligibility for medical assistance benefits. In no way does Maryland restrict an individual from retaining such an asset, whether he be categorically or medically needy. Thus, because the state does not distinguish between these classes of individuals so long as they hold assets, the court finds no conflict between Maryland's regulation and 42 C.F.R. §§ 448.3(c)(1)(iv) and 448.3(c)(3)(ii).[11]

For the foregoing reasons, the court finds no specific conflict between the state transfer of assets regulation and any federal statute or regulation governing the Medicaid program. Furthermore, the court finds no implied restriction upon the state's effort to regulate fraudulent practices. A state, of course, has a valid interest generally in preserving the fiscal integrity of its programs. *Shapiro v. Thompson*, 394 U.S.

---

**10.** The resources to be excluded from consideration in the SSI program are enumerated in 42 U.S.C. § 1382b(a) and 20 C.F.R. §§ 416.1210–416.1236.

**11.** Such a conflict, concerning income requirements, was clearly apparent in the New York regulations at issue in *Greklek v. Toia, supra.*

618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). In compliance with federal law, Maryland has adopted certain financial eligibility requirements and recovery procedures which help to assure the fiscal integrity of its medical assistance program. It would be a peculiar result indeed were the state prohibited from attempting to eliminate evasions of its valid eligibility requirements and recovery procedures. Generally, a state is entitled to adopt reasonable regulations in an effort to prevent fraud. *Lavine v. Milne, supra,* 424 U.S. at 584 n.9, 96 S.Ct. 1010; *Buckner v. Maher, supra,* 424 F.Supp. at 373. The court finds COMAR 10.09.01.10(D) to be such a reasonable regulation, in neither express nor implied conflict with federal statutory and regulatory law.

■ Plaintiffs contend that the Maryland regulation's creation of two classes—SSI recipients, for whom there is no transfer of assets restriction, and the medically needy, who are subject to the regulation's strictures—violates the equal protection clause of the Constitution. Such a regulatory classification denies equal protection only if it lacks any reasonable basis. *See Dandridge v. Williams,* 397 U.S. 471, 483–87, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Classifications need not be perfect, *id.* at 485, 90 S.Ct. 1153, nor is the state required to apply strict uniformity in attempting to reach its legitimate objectives, *id.* at 486–87, 90 S.Ct. 1153. Maryland's program for assistance to the medically needy was initiated at its option, and extends beyond the state's program for SSI recipients. The medically needy by definition have greater incomes than SSI recipients. Maryland has an interest in assuring that medical assistance benefits are disbursed only to those who are truly in need and has a further interest in maintaining the fiscal soundness of its program. The state could rationally determine to scrutinize transfers of assets made by the medically needy to assure that eligibility is not improperly manufactured and recovery not improperly circumvented. The court finds no reason grounded in the equal protection clause to require Maryland to apply identical standards to two distinct medical assistance programs within the larger state program as a whole.

■ Plaintiffs also argue that COMAR 10.09.01.10(D) creates some sort of irrebuttable presumption in violation of the due process clause. The short answer is that the regulation establishes no such presumption, nor even a rebuttable presumption. The state is required to make a finding that the transfer of assets occurred for the proscribed purpose, and, as noted previously, the state, as required by 42 U.S.C. § 1396a(a)(3), has established an administrative hearing procedure by which applicants and recipients may appeal from adverse determinations by local departments of social services. The regulation places no burden of proof whatsoever on the individual applying for or receiving medical assistance. The court concludes that the regulation does not violate the due process rights of the plaintiffs. *See Lavine v. Milne,* 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976).

Accordingly, it is this 15th day of November, 1978, by the United States District Court for the District of Maryland, ORDERED:

1. That classes be certified as defined in the foregoing Memorandum; and

2. That judgment be entered in favor of the defendant against the plaintiffs.

## APPENDIX

### 10.09.01.10  DEPARTMENT OF HEALTH AND MENTAL HYGIENE

.10 Assets.

A. Assets to be considered in determining financial eligibility are assets convertible to cash, and include all of the unit's accumulated wealth, including cash savings, bank accounts, stocks, bonds, cash value of life insurance, mortgages, real property, the unit's pro rata share of assets held in joint ownership, and personal property. When there is property, including property which is leased by the applicant either singularly or jointly, the applicant's share of the fair market value of the property is considered an available asset.

B. The following assets are excluded in determining the value of assets to be measured against Schedule MA–2:

(1) The applicant's home.

(2) The market value of real property if the property is income producing. To be considered income producing, the property must produce a net profit of not less than 6 percent annually of the applicant's share of the fair market value. Income from the property is earned income.

(3) The following personal items:

(a) Those needed to maintain the home or necessary for employment, including clothing and personal effects;

(b) Household furnishings and appliances necessary to maintain a home;

(c) An automobile necessary for transportation to a job, to obtain medical care, and to purchase essential household supplies; one additional automobile may be excluded when more than one member of the unit is employed, and two automobiles are essential for the continued employment of all employed members of the unit;

(d) Tools or equipment necessary for earnings;

(e) Family heirlooms.

(4) The cash value of life insurance for each member of the unit with a maximum face value of $1,500 for each person. Life Insurance which exceeds these levels is pro-rated and the cash value of the excess amount considered as an asset.

(5) Lump-sum benefits, except lump-sum benefits covered in § C, below, when declared by the applicant as income.

(6) The value of assets which resulted from the conservation of income pursuant to Regulation .11D(1)(b), below.

C. Lump-sum benefits, including insurance benefits, received by a recipient as a result of an illness or injury, which are applicable to medical expenses covered by Medical Assistance, shall be reported according to Regulation .16, below, and paid to Medical Assistance as reimbursement for benefits paid on behalf of the recipient.

D. Transfer of Assets.

(1) An applicant who assigns or transfers assets, including those listed in § B, above, with the intent of becoming eligible for Medical Assistance or to circumvent the Program's recovery procedures during the 3 years before filing application is ineligible if the transfer results in a loss of a resource which would have been available to meet medical expenses or in the loss of a potential source of recovery. In determining whether or not the transfer was for the purpose of meeting eligibility requirements or preventing recovery, the following factors are considered:

(a) The reason for the transfer;

(b) The physical condition of the applicant and the resulting need for medical care at the time of transfer;

(c) The amount received in relation to the person's full equity;

(d) Whether the proceeds were used for reasonable living expenses or medical expenses before application;

(e) Competency of the applicant at the time of transfer.

(2) Assets transferred by a recipient, while receiving Medical Assistance, for the purpose of continuing to receive assistance or to circumvent recovery procedures, and without the consent of the local department of social services, are considered an existing asset affecting current and continued eligibility for a period not to exceed 3 years.

(3) The unreported transfer of assets for the purpose of circumventing the provision of § D(1) and (2), above, will result in the recipient's ineligibility and will be reported to the Medical Assistance Compliance Administration for investigation.

(4) The transfer of assets, whose value is less than that set forth in Schedule MA–2, is not subject to § D(1), (2), or (3), above.

E. A unit whose assets exceed Schedule MA–2, below, is ineligible.

DEPARTMENT OF HEALTH AND
MENTAL HYGIENE

F. Schedule MA–2.

Asset Scale—Amounts Allowable for Assets to Be Retained

| Persons in Unit | Medical Assistance Standard |
|---|---|
| 1 | $2,500 |
| 2 | 2,600 |
| 3 | 2,700 |
| 4 | 2,800 |
| 5 | 2,900 |
| 6 | 3,000 |
| Each Additional Person Over 6 | 100 |